| | |
|---|---|
| CLEVELAND WILLIAMS,  :<br>    *Plaintiff*,    :<br>                     :<br>v.                      :<br>                     :<br>CHILDFIRST SERVICES, INC., :<br>    *Defendant*.    : | CIVIL ACTION<br>NO. 17-3790 |

| | |
|---|---|
| **Jones, II    J.** | **September 13, 2019** |

### MEMORANDUM

**I.    INTRODUCTION**

Plaintiff Cleveland Williams ("Plaintiff") commenced this action against Defendant Childfirst Services, Inc. ("Defendant") for his alleged discriminatory termination due to a qualified disability. Plaintiff has alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), the Pennsylvania Human Relations Act, 43 Pa.C.S. § 951 *et seq*. ("PHRA"), the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100 *et seq*. ("PFPO"), and a common law wrongful discharge claim. Defendant timely moved for summary judgment on all of Plaintiff's claims.

For the reasons that follow, the Court shall grant Defendant's Motion for Summary Judgment with respect to the ADA claim for failing to state a *prima facie* case of disability discrimination under the act. Consequently, the Court will not reach the merits of Defendant's motion with respect to Plaintiff's remaining claims, which have several issues of disputed facts, the materiality of which this Court will leave to the state court to address on remand.

## II. UNDISPUTED MATERIAL FACTS

As the ruling herein solely concerns Plaintiff's ADA claim, the Court will only recite the undisputed facts relevant to this claim, viewed in the light most favorable to Plaintiff as the non-moving party.

Defendant operates small group residences in Pennsylvania for at-risk teenage minors, some of whom have emotional and behavioral difficulties. Def. SUF at ¶¶ 1, 4 (ECF No. 27-2); Pl. SUF at ¶¶ 1, 4 (ECF No. 28-1). Plaintiff was hired by Defendant as a childcare worker or "houseparent" in August 2016. Def. SUF at ¶ 3; Pl. SUF at ¶ 3. His job duties included taking the six to eight children on his floor to school, teaching them certain life skills such as etiquette and cooking, and taking them to various activities and appointments. Def. SUF at ¶ 7; Pl. SUF at ¶ 7. Due to the emotional and behavioral supports the children needed, after hiring him, Defendant gave Plaintiff a description listing the physical capabilities that would be needed for the job, including: "considerable upper body strength as well as full range of motion in the[] arms[,] hands, legs and feet" and an ability to "use hands and have upper body strength to hold aggressive children."[1] Def. SUF at ¶¶ 8-9; Pl. SUF at ¶¶ 8-9. In actuality, Plaintiff also had to be able to defend himself against knives being pulled on him, circumvent being pushed into walls, and defend himself against children who were three times his height.[2] Def. SUF at ¶ 11; Pl. SUF at ¶ 11.

On December 1, 2016 a physical altercation broke out between residents under Plaintiff's care. Def. SUF at ¶ 44; Pl. SUF at ¶ 44. Plaintiff and two of his colleagues attempted to defuse

---

[1] Plaintiff does not concede that these physical requirements constituted essential functions of the job as defined in the ADA.

[2] See *id*.

the situation, and in doing so, Plaintiff's lower back and shoulder were injured. Def. SUF at ¶ 45; Pl. SUF at ¶ 45. Afterwards, Plaintiff drafted and sent an incident report to Hosea Crooms, Jr., Plaintiff's supervisor, who was also present during the incident, documenting his injuries. Def. SUF at ¶¶ 13, 46; Pl. SUF at ¶¶ 13, 46. Thereafter, despite his injuries, Plaintiff returned to work to prevent a disruption in coverage and he continued working his normal schedule until December 11, 2016. Def. SUF at ¶¶ 47, 48, 79; Pl. SUF at ¶¶ 47, 48, 79.

On December 11th Plaintiff sought treatment for a case of bronchitis he developed after being in cold conditions at work for an extended period. Def. SUF at ¶ 56; Pl. SUF at ¶ 56. While there, he also sought treatment for his back and shoulder pain but was denied care due to an issue with his worker's compensation coverage. Def. SUF at ¶ 57; Pl. SUF at ¶ 57. Apparently, Mr. Crooms never informed the contact person for employee injuries and worker compensation claims, Elizabeth Williams, the Senior Assistant to Defendant's President and CEO, Dr. Nathaniel Williams, of Plaintiff's injuries or forwarded Plaintiff's incident report to her. Def. SUF at ¶¶ 41, 46; Pl. SUF at ¶¶ 41, 46. Consequently, a claim for those injuries was not made and the individual treating Plaintiff's bronchitis refused to treat his back and shoulder pain. Def. SUF at ¶ 57; Pl. SUF at ¶ 57. Plaintiff left that appointment with a medical report regarding his bronchitis that he gave to Ms. Williams the next day when he asked for time off to recuperate from his bronchitis. Def. SUF at ¶ 58; Pl. SUF at 58. Plaintiff's request was granted, and his leave extended three weeks until he recovered from his bronchitis. Def. SUF at ¶¶ 58, 60; Pl. SUF at ¶¶ 58, 60.

On December 13, 2016, Plaintiff asked Ms. Williams, for a list of approved worker's compensation doctors because his "back was still hurting from the fight that broke out." Def. SUF at ¶ 61; Pl. SUF at ¶ 61. That was the first time he had informed her personally of the

injuries he obtained during the December 1st altercation. Def. SUF at ¶ 62; Pl. SUF at ¶ 62. Shortly after asking Ms. Williams for a referral to a worker's compensation physician Plaintiff was terminated. The cause for that termination is disputed.

After his termination, Plaintiff made a worker's compensation claim. Def. SUF at ¶ 61; Pl. SUF at ¶ 61. On April 26, 2017 he was deposed in connection with that claim and testified to the following:

> A. No, I don't feel I could work as a house parent, no.
> Q. Why do you feel incapable of performing your duties as a house parent?
> A. As far as like the heavy lifting, going up the third flight, going up the stairwells, and dealing with the physical restraints of the kids, I'm not going to be able to do it.

Def. SUF at ¶ 69; Pl. SUF at ¶ 69. Additionally, Plaintiff's treating physician advised that he could only do sedentary work based on the list of physical capabilities needed for Plaintiff's position. Pl. SUF. at ¶ 71; Def. SUF at ¶ 71.[3] However, his physician's recommendation did not take into account that Plaintiff worked at a "hands off" facility, and regardless, Plaintiff believed he could do the job with medication. Pl. SUF. at ¶ 71; Def. SUF at ¶ 71.

Plaintiff also testified that he could lift things, but generally does not. Def. SUF at ¶ 70; Pl. SUF at ¶ 70. As an example, Plaintiff testified that he doesn't lift weights anymore or horseplay with his daughters by throwing them up in the air because he never knows when his back will spasm and get stuck in a certain position. Def. SUF at ¶ 73; Pl. SUF at ¶ 73. That was not to say that Plaintiff could not lift his daughters, who were two and three years old at the time, at all. Def. SUF at ¶ 70; Pl. SUF at ¶ 70. Simply that he experienced pain if he did so in a "fast

---

[3] Plaintiff states in his undisputed statement of facts that "the essential functions of the job are in dispute as Ms. Williams testified at her worker's compensation deposition that Defendant was a 'no touch' facility and that it employed a 'hands-off' policy." Pl. SUF at ¶ 71.

pace manner." Def. SUF at ¶ 70; Pl. SUF at ¶ 70 (internal quotation omitted). Plaintiff has received shots to manage the pain and was informed that his injury would likely be lifelong. Pl. SUF at ¶¶ 76-77; Def. SUF at ¶¶ 76-77. He "can lead a normal life with his injury," but he "experiences lifting restrictions at times as a result of [them]." Pl. SUF at ¶ 78; Def. SUF at ¶ 78.

### III.  PROCEDURAL HISTORY

On August 22, 2017, Plaintiff filed his Complaint against Defendant. (ECF No. 1). Defendant filed its Answer with Affirmative Defenses on December 27, 2017, and the parties subsequently proceeded to discovery. Plaintiff filed an Amended Complaint on May 31, 2018 (ECF No. 22), which Defendant answered on June 7, 2018 (ECF No. 24). On August 30, 2018, Defendant filed the pending Motion for Summary Judgment (ECF No. 27). Plaintiff filed his Opposition on September 14, 2018 to which Plaintiff filed a Reply on September 27, 2018. While the instant motion was pending, the Parties held an unsuccessful settlement conference on November 28, 2018. This matter is now fully briefed and ripe for adjudication.

### IV.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Therefore, in order to defeat a motion for summary judgment, factual disputes must be both (1) material, meaning they concern facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Regardless of the existence of disputed facts or their materiality, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23.

## V. DISCUSSION

This Court's federal question jurisdiction is based upon Plaintiff's sole federal claim under the ADA. Until this juncture, the Court has exercised supplemental jurisdiction over Plaintiff's common-law wrongful termination claim and claims under the PHRA and PFPO. After reviewing the evidence of record in a light most favorable to Plaintiff, the Court shall grant Defendant's Motion for Summary Judgment as to Plaintiff's ADA claim because Plaintiff has failed to plead an essential element of that claim for which he will bear the burden of proof at trial. Additionally, the Court declines to continue to exercise supplemental jurisdiction over Plaintiff's state-law claims and will not reach the merits of the Motion for Summary Judgment on those counts.

### A. Dismissal of the ADA Claim

Plaintiff claims that his termination was the result of disability discrimination in violation of the ADA. To establish a *prima facie* case of discrimination under the ADA, Plaintiff must demonstrate that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable

accommodations by the employer; and (3) he has suffered an otherwise adverse employment action as a result of discrimination. 42 U.S.C. § 12111(8); *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998). This matter turns on the first element; whether Plaintiff had a statutorily defined disability.

The ADA defines a disability as: (a) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. §12102(1). Defendant argues that Plaintiff cannot state a *prima facie* case of disability discrimination because he did not, at the time of his termination, have a disability as defined by the ADA. Mem. Mot. Summ. J. at 17-18 (ECF No. 27-1).

Defendant identifies Plaintiff's bout with bronchitis and his back and shoulder pain as his alleged disabilities. Mem. Mot. Summ. J. at 16. Defendant spends a significant amount of time arguing that Plaintiff's bronchitis did not constitute a disability. Mem. Mot. Summ. J. at 17-18. However, as Plaintiff did not address that point in his brief, the Court will deem it conceded. *See* Opp'n Mot. Summ. J. (ECF No. 28). *Conrad v. Wachovia Group Long Term Disability Plan*, No. 08-5416, 2010 WL 5055783, at *2 (D.N.J. Dec. 2, 2010). Curiously, Defendant did not argue that Plaintiff's back and shoulder injuries did not constitute a disability. *See* Mem. Mot. Summ. J. at 16-18. Plaintiff reads this failure as an inability to do so in light of the record. Opp'n Mot. Summ. J. at 12. Plaintiff is incorrect.

Turning then to the "actual disability" prong, not every pain or "every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(ii). Only those impairments that "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." *Id*. Lifting is a major life activity. 42 U.S.C. §12102(2). "[W]hether

accommodations by the employer; and (3) he has suffered an otherwise adverse employment action as a result of discrimination. 42 U.S.C. § 12111(8); *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998). This matter turns on the first element; whether Plaintiff had a statutorily defined disability.

The ADA defines a disability as: (a) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. §12102(1). Defendant argues that Plaintiff cannot state a *prima facie* case of disability discrimination because he did not, at the time of his termination, have a disability as defined by the ADA. Mem. Mot. Summ. J. at 17-18 (ECF No. 27-1).

Defendant identifies Plaintiff's bout with bronchitis and his back and shoulder pain as his alleged disabilities. Mem. Mot. Summ. J. at 16. Defendant spends a significant amount of time arguing that Plaintiff's bronchitis did not constitute a disability. Mem. Mot. Summ. J. at 17-18. However, as Plaintiff did not address that point in his brief, the Court will deem it conceded. *See* Opp'n Mot. Summ. J. (ECF No. 28). *Conrad v. Wachovia Group Long Term Disability Plan*, No. 08-5416, 2010 WL 5055783, at *2 (D.N.J. Dec. 2, 2010). Curiously, Defendant did not argue that Plaintiff's back and shoulder injuries did not constitute a disability. *See* Mem. Mot. Summ. J. at 16-18. Plaintiff reads this failure as an inability to do so in light of the record. Opp'n Mot. Summ. J. at 12. Plaintiff is incorrect.

Turning then to the "actual disability" prong, not every pain or "every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(ii). Only those impairments that "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." *Id*. Lifting is a major life activity. 42 U.S.C. §12102(2). "[W]hether

accommodations by the employer; and (3) he has suffered an otherwise adverse employment action as a result of discrimination. 42 U.S.C. § 12111(8); *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998). This matter turns on the first element; whether Plaintiff had a statutorily defined disability.

The ADA defines a disability as: (a) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. §12102(1). Defendant argues that Plaintiff cannot state a *prima facie* case of disability discrimination because he did not, at the time of his termination, have a disability as defined by the ADA. Mem. Mot. Summ. J. at 17-18 (ECF No. 27-1).

Defendant identifies Plaintiff's bout with bronchitis and his back and shoulder pain as his alleged disabilities. Mem. Mot. Summ. J. at 16. Defendant spends a significant amount of time arguing that Plaintiff's bronchitis did not constitute a disability. Mem. Mot. Summ. J. at 17-18. However, as Plaintiff did not address that point in his brief, the Court will deem it conceded. *See* Opp'n Mot. Summ. J. (ECF No. 28). *Conrad v. Wachovia Group Long Term Disability Plan*, No. 08-5416, 2010 WL 5055783, at *2 (D.N.J. Dec. 2, 2010). Curiously, Defendant did not argue that Plaintiff's back and shoulder injuries did not constitute a disability. *See* Mem. Mot. Summ. J. at 16-18. Plaintiff reads this failure as an inability to do so in light of the record. Opp'n Mot. Summ. J. at 12. Plaintiff is incorrect.

Turning then to the "actual disability" prong, not every pain or "every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(ii). Only those impairments that "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." *Id*. Lifting is a major life activity. 42 U.S.C. §12102(2). "[W]hether

an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication." 42 U.S.C. §12102(4)(E)(i)(I).

Plaintiff provides the Court with a veritable digest of case law and secondary sources regarding how the Court should conduct its inquiry on this point. *See* Opp'n Mot. Summ. J. at 5-12. However, Plaintiff's only actual argument is a mere one sentence conclusory assertion: "The evidence in this case demonstrates that, as a result of the December 1, 2016 injury to his shoulder and back, Mr. Williams [Plaintiff] suffered from a physical impairment that substantially limits (at times) the major life activity of lifting." Opp'n Mot. Summ. J. at 12. It is **Plaintiff's burden** to state a *prima facie* case of disability discrimination, which requires establishing his alleged back and shoulder pain constituted a disability. *Celotex*, 477 U.S. at 323. Consequently, regardless of Defendant's argument – or lack thereof – on this point, given Plaintiff's burden, the Court's consideration of Defendant's motion must also include a review of the record to determine if Plaintiff has established those elements he will have to prove at trial. As Plaintiff had notice of this burden and his obligation to come forward with evidence establishing a *prima facie* case of disability discrimination, the Court may dismiss this count if a review of the record demonstrates that Plaintiff has not established that he had a disability as defined by the ADA at the time of his termination. *Id*. at 323, 326 ("The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which []he has the burden of proof") (internal quotation omitted).

There is sufficient evidence of record demonstrating that Plaintiff's back and shoulder pain constituted an impairment. The question is whether that impairment substantially limited

an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication." 42 U.S.C. §12102(4)(E)(i)(I).

Plaintiff provides the Court with a veritable digest of case law and secondary sources regarding how the Court should conduct its inquiry on this point. *See* Opp'n Mot. Summ. J. at 5-12. However, Plaintiff's only actual argument is a mere one sentence conclusory assertion: "The evidence in this case demonstrates that, as a result of the December 1, 2016 injury to his shoulder and back, Mr. Williams [Plaintiff] suffered from a physical impairment that substantially limits (at times) the major life activity of lifting." Opp'n Mot. Summ. J. at 12. It is **Plaintiff's burden** to state a *prima facie* case of disability discrimination, which requires establishing his alleged back and shoulder pain constituted a disability. *Celotex*, 477 U.S. at 323. Consequently, regardless of Defendant's argument – or lack thereof – on this point, given Plaintiff's burden, the Court's consideration of Defendant's motion must also include a review of the record to determine if Plaintiff has established those elements he will have to prove at trial. As Plaintiff had notice of this burden and his obligation to come forward with evidence establishing a *prima facie* case of disability discrimination, the Court may dismiss this count if a review of the record demonstrates that Plaintiff has not established that he had a disability as defined by the ADA at the time of his termination. *Id*. at 323, 326 ("The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which []he has the burden of proof") (internal quotation omitted).

There is sufficient evidence of record demonstrating that Plaintiff's back and shoulder pain constituted an impairment. The question is whether that impairment substantially limited

his major life activity of lifting. This inquiry requires the Court to do more than consider the impact of Plaintiff's impairment on his ability to perform specific job duties. *Cella v. Villanova University*, 113 Fed. Appx. 454, 455 (3d Cir. 2004). Rather, the Court must consider how the impairment affects a range of Plaintiff's daily activities. *Id.* It is Plaintiff's burden to establish the impact of his impairment and to demonstrate that it is permanent or long-term. *Id.*

The only evidence of record that Plaintiff put forth regarding the impact of his impairment on a range of daily activities concerned certain interactions with his daughters, his ability to lift weights, and his belief that he could perform his former job duties with medication. Plaintiff testified that he could no longer horseplay with his daughters in the way he had before sustaining his injury and that if he wanted to lift them, he could not do so at a fast pace. These limitations do not demonstrate that the impairment to his back and shoulder substantially limited his ability to lift "as compared to most people in the general population." *See* 29 C.F.R. § 1630.2(j)(ii); *see also Cella*, 113 Fed. Appx. at 455 (affirming grant of summary judgment on ADA claim where plaintiff's injuries caused lifting restrictions, but record evidence did not establish it limited a range of activities); *Marinelli v. City of Erie*, 216 F.3d 354, 364 (3d Cir. 2000) (doctor ordered ten-pound lifting restriction did not establish an impairment that substantially limited a major life activity);

The strongest evidence in Plaintiff's favor regarding the impact of his impairment is the recommendation of his treating physician that he only do sedentary work. However, Plaintiff presented somewhat contradictory evidence regarding his ability to perform his work duties. At a deposition taken four months after he sustained his injuries, Plaintiff testified that he could no longer perform his former duties as a house parent. He then testified at a deposition for this action that he believes he could do his former job duties if he took medication. Plaintiff also

states that his treating physician's recommendation had to be taken with qualification because it was given based on "what his understanding of the job requirements were" and "the essential functions of the job are in dispute" given the house in which he formerly worked had a "'hand's off policy.'" Pl. SUF at ¶ 71.  Nonetheless, the Court will view his doctor's statement in a light most favorable to Plaintiff and not take into account the ameliorative effect medication may have on his ability to fulfill the lifting aspects of his former job duties – regardless of whether they were essential functions.

Under case law in this circuit, relegation to certain sedentary activities does not evidence a substantial impact on a major life activity.  *DeGroat v. Power Logistics*, 118 Fed. Appx. 575, 576 (3d Cir. 2004); *see also Leone v. Air Products & Chemicals, Inc.*, Case No. 07-2322, 2008 WL 1944104, at *3 (E.D. Pa. May 1, 2008) (granting summary judgment on ADA claim where plaintiff's impairment limited him to sedentary duty and lifting restrictions).  And assuming Plaintiff could not perform his former job duties related to lifting, without deciding those duties were essential functions of the job, his inability to restrain someone, do heavy lifting, or defend himself against someone three times his size does not demonstrate a substantial impact as compared to most people in the general population.

Plaintiff did not argue that he had a record of a disability, therefore the Court will not address this prong.

Finally, as to being "regarded as" having a disability, an individual must "establish[] that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment" regardless of whether the "impairment limits or is perceived to limit a major life activity." § 12102(a)(3)(A).  An employer's awareness of an employee's impairment does not demonstrate the employer regarded the employee as disabled.

*Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). The employer must **know or perceive** of an employee as having an actual disability. *Boyce v. Commw. Of Pennsylvania*, No. 4-0110, 2006 WL 3386626, at * 8 (W.D. Pa. Nov. 22, 2006). A close temporal proximity between the employer learning about the actual or perceived impairment and the employee's termination may be sufficient to satisfy this element. Opp'n Mot. Summ. J. at 15; *Warshaw v. Concentra Health Servs.*, 719 F. Supp. 2d 484, 496 (E.D. Pa. 2010).

Plaintiff argues the temporal proximity between him asking Ms. William's for worker's compensation doctors and his suspension establishes Defendant regarded him as having a disability. Opp'n Mot. Summ. J. at 16. He cites to several cases in support of this contention. *See, e.g.*, *McFadden v. Biomedical Systems Corp.*, No. 13-4487, 2014 WL 80717 (E.D. Pa. Jan. 9, 2014) (motion to dismiss denied where employer was aware of plaintiff's herniated discs and permanent need for reasonable accommodations, but terminated him when his condition deteriorated and he required a two-three week leave to obtain surgery); *Kiniropoulos v. Northampton County Child Welfare Service*, No. 11-6593, 917 F.Supp.2d 377 (E.D. Pa. Jan. 11, 2013) (plaintiff informed his employer of an injury and doctor-ordered work restrictions before requesting and receiving accommodations for two weeks and then requesting medical leave and being terminated); *Weaver v. County of McKean*, No. 11-254, 2012 WL 1564661 (E.D. Pa. Apr. 9, 2012) (denying a motion to dismiss where plaintiff pled she was called into a meeting by her employer because she was "acting different," forced to disclose the medications she was taking, and then placed on administrative leave that same day); *LaGatta v. Pa. Cyber Charter Sch.*, 726 F. Supp. 2d 578 (W.D. Pa. 2010) (plaintiff terminated after a week of incidents with colleagues where she was talking to herself and acting strange); *Warshaw*, 719 F. Supp. 2d 484 (plaintiff terminated three days after testing positive for his legal use of methamphetamine to treat his

attention deficit hyperactivity disorder); *Bullock v. Balis & Co.*, No. 99-748, 200 WL 1858719 (E.D. Pa. 2000) (employer terminated plaintiff a few days after being informed by plaintiff that his poor performance may be the result of attention deficit disorder); *Stewart v. Bally Total Fitness*, No. 99-3555, 2000 WL 1006936 (E.D. Pa. July 20, 2000) (despite having received two promotions, plaintiff demoted three days after returning from being hospitalized for a mental illness disclosed to his employer, and indefinitely suspended three days thereafter) *Price v. Dolphin Services, Inc.*, No. 99-3888, 2000 WL 1789962 (E.D. La. Dec. 5, 2000) (plaintiff terminated after being sent to the company physician and receiving work restrictions after having a hypoglycemic episode and experiencing multiple falls and seizures due to his diabetes).

The majority of the caselaw relied upon by Plaintiff concerns motions to dismiss where the plaintiff was not required to demonstrate **with evidence of record** an ability to establish each element of a *prima facie* case of disability discrimination. The remainder concerns disclosed and actually known impairments, or an established record of plaintiff having been perceived as having some type of medical condition or issue with subsequent adverse employment actions. Here, Plaintiff asked for doctor recommendations – while on a medical leave for bronchitis – because his "back was still hurting from the fight that broke out." The record does not demonstrate that Plaintiff communicated to Ms. Williams that he had permanent injuries, would need reasonable accommodations, or anything from which a reasonable jury might find she regarded him as having a disability. And, indeed, Plaintiff ***could not*** have communicated this information as he had not yet obtained treatment for his injuries or a diagnosis. Thus, while these facts may support a wrongful discharge claim, they do not allow for the inference that Plaintiff was regarded as having a disability.

Accordingly, Plaintiff has failed to establish the first element in a *prima facie* case under the ADA because the facts when viewed in a light most favorable to him do not establish that he had a disability as defined by the ADA. As such, the Court will not reach the remaining elements of the inquiry and the burden will not shift to Defendant to establish a legitimate non-discriminatory reason for Plaintiff's purported illegal termination in violation of the ADA.

### B. Remand of State-Law Claims

Under Supreme Court precedent, "whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction." *Carlsbad Technology, Inc., v. HIF Bio, Inc*. 556 U.S. 635, 639 (2009). Stated differently, under 28 U.S.C. § 1367, a district court may, in its discretion, exercise supplemental jurisdiction pursuant to that section even if it has dismissed all federal claims. *Id.* Here, however, given the multitude of disputed facts bearing upon Plaintiff's state-law claims, *cf*. Pl. SUF, *with* Def. SUF, the Court declines to exercise supplemental jurisdiction given its dismissal of Plaintiff's ADA claim.

### C. Punitive Damages

The Court will not reach this issue as it is moot with respect to Plaintiff's ADA claim, and for the state court to decide with respect to Plaintiff's remanded state-law claims.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment shall be granted as to Plaintiff's ADA claim for failing to state a *prima facie* case of discrimination. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, which are remanded to the Philadelphia Court of Common Pleas. An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II    J.